UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 22-80085-CR-CANNON

UNITED STATES OF AMERICA,
    Plaintiff,

vs.

HAITHAM ALHINDI,
    Defendant.
_____/

## **MOTION TO DISMISS**

More than four months after this Court found him incompetent to proceed and committed him for hospitalization under 18 U.S.C. § 4241(d)(1), Mr. Alhindi remains incompetent, un-hospitalized and incarcerated. Despite a clear statutory time limitation, the government asked this Court to extend his commitment indefinitely. Because his commitment has already violated his Due Process rights, Mr. Alhindi objects to the continued commitment and moves to dismiss the indictment.

## **FACTS**

Approximately five weeks after the government indicted Mr. Alhindi, the Court granted an unopposed motion and ordered the Bureau of Prisons ("BOP") to complete a competency evaluation and report by August 26, 2022. [DE 20]. Though the law requires such an evaluation be completed in "the suitable facility closest to the court," the BOP designated Mr. Alhindi to MDC-Los Angeles – a facility on the other side of the country – for this examination.

1

Then, on September 15, almost three weeks after the Court's deadline had passed, the warden at MDC-Los Angeles sent a letter. [DE 24]. Rather than opining on Mr. Alhindi's competence, the warden explained his examination had not even begun, citing travel delays and modified procedures due to the COVID-19 pandemic as the reasons, and requested an extension until November 23 to complete the evaluation and report. [DE 24]. The Court sustained Mr. Alhindi's objection to the warden's request, in part, and ordered the evaluation and report completed no later than October 14. [DE 25].

This time, the BOP complied with the order. In the report, their doctors noted Mr. Alhindi's refusal to cooperate with them and that his actions "suggest[ ] an awareness of the seriousness of the charges, and a deliberate attempt to alter the outcome." Still, they recommended commitment for competency restoration because they could not rule out "an underlying thought disorder or delusional belief system." [BOP Report dated October 14, 2022, filed under seal]. The Court scheduled a competency hearing for November 28, as it waited more than a month for the BOP to return Mr. Alhindi to the district.

At that hearing, after considering the BOP's report, the positions of the parties, and his "bizarre statements during the [ ] hearing," the Court found Mr. Alhindi incompetent to proceed and committed him "to the custody and care of the Attorney General" for hospitalization to determine whether he would become competent in the foreseeable future. [DE 34]. The commitment was "not to exceed four months from the date of th[e] Order." [DE 34].

Despite the November 28 order, the BOP did not hospitalize Mr. Alhindi. Instead, he remained at the St. Lucie County Jail until late December, arriving at FDC-Miami on December 27. In Miami, he awaited designation and transport to the hospital, but that transport never came.

Upon learning of the BOP's failure to hospitalize Mr. Alhindi, this Court issued a second order requiring immediate compliance with the first order. [DE 36]. In response, a psychologist at FDC-Miami sent a letter recommending this Court order a second competency evaluation because her observations of him, like those of the doctors in Los Angeles, suggested he was "not displaying any signs of acute mental illness, denies any mental health concerns, and demonstrated very good overall functioning at FDC-Miami." [BOP letter dated March 1, 2023, filed under seal].

At a hearing on March 2, 2023, the government echoed the BOP's latest recommendation and requested another competency evaluation. Over Mr. Alhindi's objection that section 4241(b) did not authorize a second evaluation under these circumstances, this Court granted the government's request. [DE 39, 40]. And the BOP doctor again found Mr. Alhindi incompetent to proceed – this time diagnosing him with "Delusional Disorder, Persecutory Type" – after he cooperated with the evaluation. [BOP Report dated March 29, 2023, filed under seal].

On April 10, based on this report, the parties' agreement, and additional statements from Mr. Alhindi during the hearing, this Court again found him incompetent to proceed. [DE 46]. The government then asked the Court to continue

his commitment. Mr. Alhindi, through counsel, objected to the continued commitment on due process grounds, and the Court ordered the parties to brief the issue.

## ARGUMENT

In *Jackson v. Indiana*, 406 U.S. 715, 731 (1972), the Supreme Court held the indefinite commitment of an incompetent defendant violates due process. To comport with due process, that commitment may not last longer than "the reasonable period of time necessary to determine whether there is a substantial probability he will attain [competence] in the foreseeable future." *Id.* at 738. If such a probability exists, the Court may justify continued commitment only by "progress toward that goal." *Id.*

In response to *Jackson*, and as part of an overhaul to the federal competency statute, Congress passed 18 U.S.C. § 4241(d). *United States v. Donofrio*, 896 F.2d 1301, 1302 (11th Cir. 1990); *United States v. Donnelly*, 41 F.4th 1102, 1105 (9th Cir. 2022). That section mandates commitment of an incompetent defendant to the custody of the Attorney General for hospitalization to determine whether he will attain competence in the foreseeable future. 18 U.S.C. § 4241(d). It specifically provides for hospitalization "for such a reasonable time, *not to exceed four months*" to make that determination. 18 U.S.C. § 4241(d)(1) (emphasis added). By contrast, subsection (d)(2)(A), which addresses the time permitted for restoration after the (d)(1) determination has been made, allows commitment "for a *reasonable* period of time." 18 U.S.C. § 4241(d)(2)(A) (emphasis added). Without a factual finding by the court that the defendant is restorable, the statute simply does not authorize commitment for more than four months. *United States v. Baker*, 807 F.2d 1315, 1320

4

(6th Cir. 1986)("We believe that [section 4241(d)] requires that a determination as to the individual's mental condition be made within four months, and that the individual *cannot be held* pursuant to section 4241 in excess of four months unless the court finds that the individual is likely to attain competency within a reasonable time.")(emphasis added).

The phrase "not to exceed four months" is not ambiguous. And the fact that subsection (d)(2)(A) provides for hospitalization for "an additional *reasonable* period of time" confirms Congress's intent in drafting (d)(1): four months is an absolute deadline to determine restorability. *United States v. Carter*, 583 F. Supp. 3d 94, 100 (D.D.C. 2022). Congress would have used different language, as it did under (d)(2), if it intended the time period under (d)(1) to be something other than four months. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts*, 174-179 and 183-188 (2012) (discussing how every word and every provision in a law is to be given effect, and that the specific provision prevails if it conflicts with the general). Moreover, because the plain text of section 4241(d) does not exclude pre-hospitalization detention from the proscribed time frame, Congress must have intended "those delays [to] be part of the 'reasonable period of time, not to exceed four months.'" *Carter*, 583 F. Supp. 3d at 100-101; *Compare* 18 U.S.C. § 3161(h)(1)(F) (specifically excluding time from the speedy trial clock for delay resulting from "transportation . . . to and from places of examination or hospitalization").

At the April 10 hearing, this Court suggested the text of section 4241(d) limits only the "hospitalization" of an incompetent defendant to four months, but does not

5

limit pre-hospitalization detention. Considering the statute was Congress's response to *Jackson's* due process concerns about the indefinite commitment of incompetent defendants, *Donofrio*, 896 F.2d at 1302, it is difficult to imagine Congress would have limited that commitment *during* hospitalization but not intended that limit to apply *before* hospitalization began. Such statutory construction would yield an absurd result: an incompetent, incarcerated, and committed defendant could **indefinitely** await a hospital bed without triggering the very statutory mechanism created to avoid the **indefinite** commitment *Jackson* prohibits. *See* Scalia, *Reading the Law*, 234-239.

And because waiting in jail for hospital placement is not reasonably related to the purposes of the commitment – evaluation or restoration – the time spent waiting would necessarily violate due process under *Jackson. See, e.g., Or. Advocacy Ctr. v. Mink*, 322 F.3d 1101, 1122 (9th Cir. 2003)(affirming district court's injunction requiring hospitalization within seven days of the trial court's order finding defendants incompetent to proceed because holding them in jail for weeks or months does not reasonably relate to evaluation or restoration and therefore violates due process); *see also, Willis v. Wash. State Dep't of Social & Health Servs.*, No. C16-5113 RBL, 2017 WL 1064390, at *6 (W.D. Wash. Mar. 21, 2017)("Although Mink did not establish a bright line rule, it held that 'weeks or months' was too long where the plaintiffs were detained for an average of one month" and the detention "bears no reasonable relation to the evaluative and restorative purpose [of the commitment]."). Lack of bed space or insufficient staffing in psychiatric facilities does not constitute

good cause for the government to fail to provide an incapacitated defendant with restorative treatment. *Mink*, 322 F.3d at 1121.

Even assuming this Court's reading of section 4241(d) is correct, *Jackson* still requires "the duration of the pre-hospitalization commitment period must be limited to the time reasonably required to accomplish th[e] tasks" of identifying an appropriate treatment facility and arranging for transportation to it. *Donnelly*, 41 F.4th at 1106. The "reasonable relation" requirement cannot permit that time period, to last longer than the maximum time Congress permitted for the hospitalization itself. *Id.*; *see also United States v. Wayda*, 966 F.3d 294, 308 (4th Cir. 2020)(finding six month delay initiating civil commitment following unrestorability finding was unreasonable where section 4241(d)(1) provides only a four month window to determine restorability in the first place).

And that is precisely what has happened here. The Court committed Mr. Alhindi on November 28, 2022. Rather than hospitalize him immediately, the BOP detained him for more than four months, **and continues to do so**, as it awaits bed availability at a facility they chose for him. Although another BOP doctor has recently confirmed he remains incompetent, neither that doctor nor any other has opined whether he is substantially likely to become competent in the foreseeable future. The BOP's failure to timely hospitalize him and address this issue leaves this Court without statutory authority to extend the commitment further without violating due process under *Jackson*.

Accordingly, this Court should not extend the commitment or the ongoing due process violation further – it should dismiss the indictment now. *United States v. Carter*, 583 F. Supp. 3d 94 (D.D.C. 2022)(finding no basis to extend section 4241(d)(1)'s four-month time period and dismissing indictment under *Jackson*); *but see Donnelly*, 41 F.4th at 1107 (denying dismissal, but instead "requiring the government to hospitalize Donnelly without further delay" and explaining that "nothing in our decision today forecloses the possibility that dismissal may become appropriate at a future date").

Respectfully submitted,

MICHAEL CARUSO
FEDERAL PUBLIC DEFENDER

s/Scott Berry
Scott Berry, B.C.S.
Assistant Federal Public Defender
Attorney for Defendant
Bar Number: 0525561
250 South Australian Avenue
Suite 400
West Palm Beach, Florida 33401
Phone: (561) 833-6288
Email: scott_berry@fd.org

## **CERTIFICATE OF SERVICE**

I HEREBY certify that on April 13, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: *s/Scott Berry*
Scott Berry